

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

_____

*445 Broadway, Room 218*          *Tel.: (518) 431-0247*
*James T. Foley U.S. Courthouse*          *Fax: (518) 431-0249*
*Albany, New York 12207-2924*

March 3, 2025

**VIA ECF**
Hon. Miroslav Lovric
United States Magistrate Judge
Federal Building and U.S. Courthouse
15 Henry Street
Binghamton, NY 13901

Re:    <u>*United States v. Facundo Carmenlino PEREZ-VASQUEZ*</u>

Dear Judge Lovric:

On behalf of the United States, we are submitting this letter to set forth the government's view of the law on the granting of detention hearings under 18 U.S.C. § 3142(f)(2)(A). The government is aware that in some recent immigration cases, including *United States v. Julio Cesar Diaz-Martinez*, No. 8:25-cr-47 (GTS), and *United States v. Bailey Burger*, No. 8:25-cr-49 (MAD), the Office of the Federal Public Defenders (Office of the FPDs) has submitted a letter arguing that it will be difficult for the government to establish that it is entitled to a detention hearing on the ground that the defendant poses a "serious risk" of flight.[1] Separately, Judge D'Agostino, in a recent appeal of a detention decision in a case where the defendant was represented by the Office of the FPDs, "encourage[d] both parties to review the current state of the law on the requirements for obtaining a detention hearing and subsequently seeking detention." Decision & Order at 19 n.3, *United States v. Terrance*, No. 8:24-cr-456 (MAD) (N.D.N.Y. Jan. 10, 2025) (*Terrance* Decision). The government has done as Judge D'Agostino suggested, and because it disagrees with the position taken by the Office of the FPDs in its letters (one of which is appended as an attachment), is submitting its own letter in the hope that its views on the state of the law will be helpful to the Court.

**I.    The Office of the FPDs' letter**

There are two paths to a detention hearing under Section 3142(f). First, if the case involves a crime in one of five enumerated categories in Section 3142(f)(1), the government is entitled to a detention hearing upon its own motion. Second, under Section 3142(f)(2), either the government or the Court itself may seek a detention hearing if there is a "serious risk that [the

_____

[1] The letter was filed on the docket in the *Diaz-Martinez* case on January 31. *See Diaz-Martinez* Dkt. 9. The letter was not filed on the docket in the *Burger* case. On February 5, the Office of the FPDs sought to withdraw from *Burger* because of a conflict, and on February 11, Judge Favro granted that motion. *See Burger* Dkt. 14, 17.

Hon. Miroslav Lovric
March 3, 2025
Page 2

defendant] will flee" or a "serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror." 18 U.S.C. § 1342(f)(2)(A), (B). In either case, if a hearing is granted, it is to be held "immediately upon [the defendant's] first appearance before the judicial officer unless [the defendant], or the attorney for the Government, seeks a continuance." *Id.* § 3142(f). A continuance sought by the government may not last more than three business days. *Id.*

In its letter, the Office of the FPDs focuses on detention hearings granted because of a "serious risk" of flight under Section 1342(f)(2)(A). These are of particular importance in immigration cases, as immigration offenses are not among the categories listed in Section 3142(f)(1). In the Office of the FPDs' view, the Court may rely on neither the crime charged, nor the potential sentence, nor the existence of an immigration detainer in assessing whether to hold a detention hearing under Section 1342(f)(2)(A).

As a practical matter, the Office of the FPDs' position would deprive the Court of virtually all information when deciding whether to grant a detention hearing. This is because, in the government's experience, Pretrial Services Reports (PTSRs) are usually not available at the initial appearance. Rather, PTSRs are generally delivered in the adjournment granted between the initial appearance and the detention hearing. Moreover, in cases involving undocumented aliens, Pretrial Services usually do not conduct an interview with the defendant, meaning that the PTSR may be based on little more than a criminal history report.[2] Such a report, even if it were available at the initial appearance, might be of little help in deciding whether to grant a detention hearing. Therefore, in immigration cases, the crime charged and the sentence it carries, and the existence of a detainer, may constitute much or all of the limited information before the Court.

The Office of the FPDs would appear to have the Court blind itself it to this evidence — and, simultaneously, make it very difficult for the government to demonstrate its entitlement to a hearing. But, as we discuss now and this Court correctly held only last month, the burden for the government to obtain a detention hearing is "very low." And the Court may certainly consider the crime charged, the potential sentence, and the existence of a detainer in deciding whether to set a hearing.

## II.    The burden for obtaining a Section 3142(f)(2)(A) detention hearing is "very low."

For a start, as the Office of the FPDs admits, the government must only establish its right to a detention hearing by a preponderance of the evidence. Letter at 2 (citing *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019)). This means that the government need only show that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is

---

[2] *See Pretrial Services Investigation & Report Procedures Manual*, Probation and Pretrial Services Office, Administrative Office of the U.S. Courts § 2.50.20 ("The officer should not conduct an interview in the following circumstances: (a) If it has been determined that the defendant is an undocumented alien, an interview is not necessary, as release is not likely.").

Hon. Miroslav Lovric
March 3, 2025
Page 3

more likely than not that the defendant will *actually* flee.  Indeed, Judge D'Agostino recognized exactly this in *Terrance* only last month.  *Terrance* Decision at 12.

Moreover, the "serious risk" bar is not high.  In its letter, the Office of the FPDs quotes a case from the District of Connecticut, which itself quotes a case from the District of Idaho, for the proposition that a "serious" risk must be one that is "great" and "beyond average."  Letter at 3 (quoting *United States v. Romero-Martinez*, 2024 WL 965150, at *4 (D. Conn. Mar. 6, 2024), in turn quoting *United States v. Figueroa-Martinez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023)).  This definition, which the Idaho court appears to have come up with itself, is inconsistent with the plain text of the statute, impossible to apply, and contradicted by settled custom and practice.  A "great" risk is clearly graver than a "serious" risk.  "Serious" in this context naturally means "significant" or "substantial"; a "great" risk is larger than a "serious" risk, *see, e.g.*, *Oxford English Dictionary*, [https://www.oed.com/dictionary/serious_adj2?tab=meaning_and_use#23340060](https://www.oed.com/dictionary/serious_adj2?tab=meaning_and_use#23340060), and there is no basis to rewrite the statute with a word that Congress did not use.[3]  Nor is it helpful to define a serious risk as one that is "beyond average" — as it is impossible to know what an "average" risk of flight might be.  Indeed, the Idaho court's opinion suggests that an "average" flight risk would be the risk posed by a "garden-variety defendant," which a defendant in a criminal immigration case is not.  *Figueroa-Martinez*, 681 F. Supp. 3d at 1138.

A review of the voluminous case law on Section 3142(f)(2) shows that, in general, courts have simply given the phrase "serious risk" its ordinary, plain English meaning, without seeking to define it more closely.  *See, e.g.*, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (upholding finding that defendant posed a serious risk of flight without defining "seriousness").  But, in cases where courts have glossed the meaning of the phrase "serious risk," they have understood it as a substantial or non-negligible risk.  *See, e.g.*, *United States v. Coleman*, 2001 WL 1249682, at *5 (N.D.N.Y. July 24, 2001) ("significant risk of flight"); *United States v. Zhang*, 2019 WL 1747197, at *3 (S.D. Fla. Apr. 15, 2019) ("substantial . . . risk of flight").

Because a "serious" risk need only be a significant risk, and because the government need only establish this risk by a preponderance of the evidence, the bar for obtaining a detention hearing is — as this Court correctly held only last month — "very low."  *Terrance* Decision at 16.  There is no basis for the Office of the FPDs to seek to disturb this holding, which is consistent with the statutory language, settled law, and common sense.  And, as set out next, the government may establish it with any relevant evidence, which includes the crime charged.

---

[3] In defining "serious" as "great," the Idaho court relied solely on an old edition of Black's Law Dictionary.  But nothing about the statutory text suggests that Congress was ascribing a technical legal, as opposed to a common-sense and practical, meaning to the word "serious."  And the most recent edition of Black's Law Dictionary does not define "serious" as "great."  *Black's Law Dictionary*, 12th Ed. (2024).

Hon. Miroslav Lovric
March 3, 2025
Page 4

### III.    The Court may consider the crime charged, the potential sentence and a detainer in granting the detention hearing.

Relying on a Second Circuit case, *United States v. Friedman*, 837 F.2d 48 (2d Cir. 1988) (per curiam), the Office of the FPDs also argues that the Court may not consider the crime charged and the sentence it carries in considering whether to grant a hearing. Letter at 4 ("Thus, the government cannot rely on the crime charged as the basis for detention."). The implication of the Office of the FPDs' letter, although not stated in as many words, is that the Court may not consider the crime charged *at all* in determining whether to grant a detention hearing. This is flatly wrong.

For a start, it is obvious that the crime charged (and, relatedly, the attached sentence) is extremely weighty evidence in determining whether to grant a detention hearing. Congress found as much when it ordered that certain charges should require, on the government's motion, a detention hearing *per se*. *See* 18 U.S.C. § 3142(f)(1). And, at the detention hearing, the first factor that the court is required to consider is the "nature and circumstances of the offense charged." *Id.* § 3142(g)(1).[4]

Nor can the Office of the FPDs draw any support from *Friedman*. In that case, a defendant who appeared to be a very low flight risk — a "life-long New York resident," married and with a family in New York, with "no passport or known ability to evade surveillance," who had not taken any steps to flee after federal agents had searched his home or after he had been arrested on state court charges, and who had been bailed on those state charges — had been charged with the "serious crime" of receiving pornography involving a minor in the mails. 837 F.2d at 49-50. The government, in seeking a detention hearing, had relied solely on the fact that he had been charged with this crime, which carried a long sentence. The Second Circuit ruled that simply being charged with *any* serious crime — including one, as here, that did not involve the defendant travelling in any way — could not support a detention hearing: "[W]e have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." *Id.* at 50.

As an initial matter, *Friedman* did not hold that *no* serious crime, on its own, could warrant a detention hearing under Section 3142(f)(2). Rather, the case plainly leaves open the possibility that charging a defendant with a serious crime that involves the defendant's ability to travel — such as immigration offenses, but unlike the offense in *Friedman* — may lead to a finding of a risk of flight. For example, flight from prosecution, 18 U.S.C. § 1073, is a serious offense — and it would be perverse if the charge of this crime alone could *not* warrant a detention hearing. To push back on this, the Office of the FPDs points out that, following *Friedman*, Congress amended the Bail Reform Act to include child pornography offenses among those that would automatically trigger a detention hearing under Section 3142(f)(1). Letter at 4; *see, e.g.*, Pub. L. 103–322, 108 Stat. 1945, tit. IV, § 40501 (Sept. 13, 1994) (including sexual abuse and child sexual exploitation offenses in the definition of "crime of violence" used in 18

---

[4] As a formal matter, the detention hearing concerns non-appearance, not flight, but there is a great overlap between these concepts. 18 U.S.C. § 3142(g).

Hon. Miroslav Lovric
March 3, 2025
Page 5

U.S.C. § 1356(a)(4)).  But no inference about how the courts should use immigration cases for determining risk of flight can be drawn from the fact that Congress repudiated the Second Circuit's approach for child exploitation cases, and the Supreme Court has specifically rejected this kind of reasoning.  "Congress's repudiation of [a court's approach] for [one type of cases] does not show any intent to *ratify* that decision's approach for almost all others." *Mission Prods. Holdings v. Tempnology, LLC*, 587 U.S. 370, 385 (2019).

More importantly, however, even if *Friedman* could be read to suggest that simply citing a serious statutory violation could never suffice to obtain a detention hearing (which the government disputes), it is plain that the government may satisfy its burden by citing the crime charged plus something "more" than that.  837 F.2d at 50.  Nothing about *Friedman* remotely implies that the Court may not look to the crime charged along with other evidence, and the Office of the FPDs cannot offer any argument to that effect.

Accordingly, at most, all that is required for the government to obtain a detention hearing in an immigration case should be the crime charged plus some information that is already in the parties' and the Court's possession.  In a case where there is no PTSR at the initial appearance, or where there is a PTSR but it contains very little information, the Court may rely simply on details of *how* the defendant carried out the crime, as alleged in the complaint.  For example, if the defendant is charged with alien smuggling under 18 U.S.C. § 1324, the Court may look to allegations of how the defendant crossed between the United States and the foreign country to determine that the defendant is capable of easily leaving the jurisdiction.  Such allegations may be found in the complaint that is the basis of the charge.[5]

This is a common-sense approach that is consistent with the "very low" statutory standard for obtaining a detention hearing and the plain text of *Friedman*, and does not unfairly penalize the government for not having information that it is unable to obtain.  It is also, in the government's experience, consistent with the approach that courts have historically taken to granting detention hearings both in this district and elsewhere.  As one court construing *Friedman* has held, the government should not be "deprived of the opportunity to establish" the need to detain a defendant simply because, at the initial appearance, it does not have adequate information available to it.  *United States v. White*, 2021 WL 2155441, at *11 (M.D. Tenn. May 27, 2021).[6]

Finally, the Office of the FPDs claims that immigration detainers also cannot support a detention hearing.  Letter at 4-5.  Pending a definitive ruling by the Second Circuit on the matter,

---

[5] They were, for example, in *Terrance*.  *See* Compl., *Terrance*, 8:24-mj-504 (ML) (N.D.N.Y. Oct. 31, 2024).

[6] The *White* court in fact held that, under *Friedman*, a court could *grant* a detention hearing simply to allow the government to establish its entitlement to it "at the detention hearing itself." 2021 WL 2155441, at *11.  While there is no need for the government to endorse this view in this submission, the holding bolsters the government's position that the burden to obtain a detention hearing should be "very low" indeed.

Hon. Miroslav Lovric
March 3, 2025
Page 6

the government agrees that removal following an immigration detainer does not constitute volitional flight. *Id.* Nevertheless, the government disagrees strongly with the logical, but unspoken, implication of the Office of the FPDs' position, which is that an immigration detainer obviates the risk of flight — as a removed defendant can no longer flee. This is not necessarily correct. For example, even if ICE does collect the individual, ICE may be unable to process him promptly and he may be released. The existence of an immigration detainer may even increase the defendant's risk of "volitional" flight. At worst, the existence of an immigration detainer should be considered neutral for purposes of assessing risk of flight.

The government thanks the Court for its careful consideration of these issues. Counsel is available to answer any questions the Court may have.

Very truly yours,

D. DANIEL HANLON
Acting United States Attorney

By:    */s/ Justin D. Bennett*
Justin D. Bennett
Special Assistant United States Attorney
Bar Roll No. 705879